6/17/2019 11:06 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 34417041
By: C Ougrah
Filed: 6/17/2019 11:06 AM

# 2019-41363 / Court: 333

CAUSE NO._____

| | | |
|---|---|---|
| HOLY COMFORTER LUTHERAN CHURCH | § § § § § | IN THE DISTRICT COURT |
| V. | § § § | _____ JUDICIAL DISTRICT |
| CHURCH MUTUAL INSURANCE COMPANY | § § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff HOLY COMFORTER LUTHERAN CHURCH, files this Original Petition against CHURCH MUTUAL INSURANCE COMPANY ("CHURCH MUTUAL" or the "INSURANCE DEFENDANT"), and in support thereof, would show as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II.
### PARTIES AND SERVICE

Plaintiff's property is located in Harris County, Texas.

Defendant CHURCH MUTUAL is in the business of insurance in the State of Texas. The insurance business done by INSURANCE DEFENDANT in Texas includes, but is not limited to, the following:

1

EXHIBIT C

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

This defendant may be served with personal process, by a process server, by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin TX 78701-3218, or wherever else it may be found.

## III.
## JURISDICTION AND VENUE

Venue is appropriate in Harris County, Texas because all or part of the conduct giving rise to the causes of action were committed in Harris County, Texas and the Plaintiff and property which is the subject of this suit are located in Harris County, Texas.

Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## IV.
## FACTS

Plaintiff is the owner of a Texas Commercial Insurance Policy (hereinafter referred to as "the Policy"), which was issued by INSURANCE DEFENDANT.

Plaintiff owns the insured property, which is specifically located at 1901 Woodland Hills Drive, Kingwood, Texas 77339 (hereinafter referred to as "the Property").

INSURANCE DEFENDANT sold the Policy insuring the Property to Plaintiff.

During the terms of said Policy, on or about May 1, 2017 under Policy No. 024024302796805 and Claim No. 1338742, Plaintiff sustained covered losses in the form of

EXHIBIT C

wind and/or hail damage and damages resulting therefrom, and Plaintiff timely reported same pursuant to the terms of the Policy. The Property sustained severe damages from the storm, including a storage closet leak which prompted the claim. Plaintiff asked that INSURANCE DEFENDANT cover the cost of repairs to the Property pursuant to the Policy. INSURANCE DEFENDANT sent a representative from Leading Edge Claims Service, Rick Calvert, to inspect the Property and assess the covered, storm-related damage. Mr. Calvert only accounted for the replacement of 4.67 squares of roofing shingles, though Mr. Calvert acknowledged more shingles were damaged. In his report, Mr. Calvert accounted for an adhesive to reseal broken shingles rather than account for their necessary replacement. INSURANCE DEFENDANT then adopted Mr. Calvert's report as a means to deny the majority of Plaintiff's claim, along with issuing a payment inconsistent with Mr. Calvert's report. It is clear INSURANCE DEFENDANT failed to conduct a full, fair and adequate investigation of Plaintiff's covered damages. Furthermore, based on the review of Insurance Defendant's engineering report and Mr. Calvert's estimate of damages, entire portions of the subject property roof were not inspected by Insurance Defendant or Mr. Calvert. Specifically, Brown Consulting Services, Inc states "the metal roofing above the north wing was not inspected" but gives no reason why this portion was ignored. This is of great concern and shows a definitive lack of a reasonable investigation by Insurance Defendant and Mr. Calvert due to their finding of damage to the fascia board along the north wing in the form of pulled-out fasteners caused by high winds. Insurance Defendant and Mr. Calvert are remiss in failing in inspect, and therefore investigate, the metal roofing above the north wing and Plaintiff has suffered damages as a result.

As detailed in the paragraphs below, INSURANCE DEFENDANT wrongfully denied Plaintiff's claim for repairs to the Property, even though the Policy provided coverage for

EXHIBIT C

losses such as those suffered by Plaintiff. Furthermore, INSURANCE DEFENDANT failed to pay Plaintiff's claim by not providing full coverage for the damages sustained by Plaintiff.

To date, INSURANCE DEFENDANT continues to delay in the payment for the damages to the Property.

INSURANCE DEFENDANT failed to perform its contractual duty to adequately compensate Plaintiff under the terms of their Policy. Specifically, INSURANCE DEFENDANT refused to pay the full proceeds of the Policy after its agent, ADJUSTER DEFENDANT conducted an outcome-oriented investigation, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. INSURANCE DEFENDANT'S conduct constitutes a breach of the insurance contract between it and Plaintiff.

Pleading further, INSURANCE DEFENDANT misrepresented to Plaintiff that the extensive damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. In ADJUSTER DEFENDANT's report, he affixed a replacement cost value of $2,677.22. After the deducting the Policy deductible, a payment of $1,677.22 was to be released to Plaintiff per Mr. Calvert's report. However, INSURANCE DEFENDANT deducted the Policy deductible twice, relaying upon its representative's misrepresentation of the damages stemming from two, separate occurrences. Plaintiff was not notified of this change until Plaintiff's representatives received a check for $677.22. These statements and omissions did not just result in a mere partial denial of the claim; instead, it they were misrepresentations of material fact relating to the coverage at issue. INSURANCE DEFENDANT'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement

EXHIBIT C

Practices. TEX. INS. CODE §541.060(a)(1). These falsities were nothing more than a veiled attempt to prevent coverage. This was not something Defendant was willing to pay despite willingly accepting Plaintiff's premiums.

INSURANCE DEFENDANT failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Its conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

INSURANCE DEFENDANT failed to explain to Plaintiff any valid reason for its coverage denial and offer of an inadequate settlement. Specifically, it failed to offer Plaintiff full compensation, without any valid explanation why full payment was not being made. Furthermore, INSURANCE DEFENDANT did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. INSURANCE DEFENDANT conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

INSURANCE DEFENDANT failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

Further, INSURANCE DEFENDANT failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

EXHIBIT C

INSURANCE DEFENDANT failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, it has delayed full payment of Plaintiff's claim and, to date, Plaintiff has not received full payment for the claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

From and after the time Plaintiff's claim was presented to INSURANCE DEFENDANT, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment. INSURANCE DEFENDANT'S conduct constitutes a breach of the common law duty of good faith and fair dealing.

Additionally, INSURANCE DEFENDANT knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

Because of INSURANCE DEFENDANT'S wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing Plaintiff with respect to these causes of action.

## V.

## CAUSES OF ACTION AGAINST INSURANCE DEFENDANT

## A.     BREACH OF CONTRACT

INSURANCE DEFENDANT'S conduct constitutes a breach of the insurance contract between it and Plaintiff.  Defendant's failure and/or refusal, as described above, to pay Plaintiff adequate compensation as it is obligated to do under the terms of the Policy in question, and

EXHIBIT C

under the laws of the State of Texas, constitutes a breach of the insurance contract with Plaintiff.

**B.      NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**

**1.      UNFAIR SETTLEMENT PRACTICES**

INSURANCE DEFENDANT'S conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices: TX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though its liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

**2.      THE PROMPT PAYMENT OF CLAIMS**

INSURANCE DEFENDANT'S conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made

EXHIBIT C

actionable by TEX. INS. CODE §542.060.

INSURANCE DEFENDANT'S failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

INSURANCE DEFENDANT'S failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

INSURANCE DEFENDANT'S delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

## C.    BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

INSURANCE DEFENDANT'S conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds pursuant to insurance contracts.

INSURANCE DEFENDANT'S failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

Additionally, and as confirmed by the engineering report submitted by Brown Consulting Services, Calvert failed to complete his own investigation and instead allowed his investigation to be delayed for approximately four months in order for Insurance Defendant to retain the services

EXHIBIT C

of an engineer, who is not insurance adjuster, and ultimately simply adopted the findings of Brown as stated specifically in Calvert's estimate, which wholly failed to investigate the entire property.

## VII.
## KNOWLEDGE

Each of the acts described above, together and singularly, was done "knowingly" by DEFENDANT as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## VIII.
## DAMAGES

Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

As previously mentioned, the damages caused by the covered losses have not been properly addressed or repaired in the months since the loss occurred, causing further damage to the Property, and causing undue hardship and burden to Plaintiff. These damages are a direct result of DEFENDANT'S mishandling of Plaintiff's claim in violation of the laws set forth above.

For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with attorney's fees.

For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as ten (10) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE

EXHIBIT C

§542.060.

For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## IX.

In addition, as to any exclusion, condition, or defense pled by DEFENDANT, Plaintiff would show that:

The clear and unambiguous language of the policy provides coverage for damage caused by losses made the basis of Plaintiff's claim, including the cost of access to fix the damages;

In the alternative, any other construction of the language of the policy is void as against public policy;

Any other construction and its use by the DEFENDANT violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

Any other construction violates Art. 17.50 of the Texas Business and Commerce Code and is unconscionable and is void as against public policy and was procured by fraudulent inducement;

Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

EXHIBIT C

In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

In the alternative, DEFENDANT is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring information.

## X.
## REQUEST FOR DISCLOSURES

Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff requests that DEFENDANT provide the information required in a Request for Disclosure.

## XI.

As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief, the maximum of which is over $200,000.00 but not more than $1,000,000.00.  The amount of monetary relief actually awarded, however, will ultimately be determined by a jury. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that INSURANCE DEFENDANT be cited to appear and answer herein; that, on final hearing, Plaintiff have judgment against INSURANCE DEFENDANT for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court; for costs of suit; for interest on the judgment; for pre-judgment interest; and, for such other and further relief, in law or in equity, either

EXHIBIT C

general or special, including the non-monetary relief of declaratory judgment against the INSURANCE DEFENDANT, to which Plaintiff may be justly entitled.

Respectfully submitted,

KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232
Telephone:      (210) 490-7402
Facsimile:      (210) 490-8372


BY:   _/s/Jake Rogiers_____
            Robert A. Pollom
            State Bar No. 24041703
            robert@krwlawyers.com
            Jake Rogiers
            State Bar No. 24069066
            jake@krwlawyers.com


            ATTORNEYS FOR PLAINTIFF


**PLAINTIFF REQUESTS A TRIAL BY JURY**

EXHIBIT C

6/17/2019 11:06:05 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 34417041
By: Ougrah, Chancesas
Filed: 6/17/2019 11:06:05 AM

# CIVIL CASE INFORMATION SHEET

**2019-41363 / Court: 333**

| CAUSE NUMBER *(FOR CLERK USE ONLY):* | | COURT *(FOR CLERK USE ONLY):* |
|---|---|---|

STYLED   Holy Comforter Lutheran Church v. Church Mutual Insurance Company

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br><br>Robert A. Pollom | Email:<br><br>stefanie@krwlawyers.com | Plaintiff(s)/Petitioner(s):<br><br>Holy Comforter Lutheran Church | ☒ Attorney for Plaintiff/Petitioner<br>*Pro Se* Plaintiff/Petitioner<br>Title IV-D Agency<br>Other: |
| Address:<br><br>16500 San Pedro Ave. #302 | Telephone.<br><br>210-490-4357 | _____ | Additional Parties in Child Support Case· |
| City/State/Zip:<br><br>San Antonio, Texas 78232 | Fax:<br><br>210-490-8372 | Defendant(s)/Respondent(s):<br><br>Church Mutual Insurance Company | Custodial Parent:<br><br>Non-Custodial Parent: |
| Signature:<br><br>*(signature)* | State Bar No:<br><br>24041703 | _____<br><br>[Attach additional page as necessary to list all parties] | Presumed Father: |

## 2. Indicate case type, or identify the most important issue in the case *(select only 1):*

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☒ Consumer/DTPA<br>Debt/Contract<br>Fraud/Misrepresentation<br>Other Debt/Contract· | Assault/Battery<br>Construction<br>Defamation<br>*Malpractice*<br>  Accounting<br>  Legal<br>  Medical<br>  Other Professional | Eminent Domain/<br>Condemnation<br>Partition<br>Quiet Title<br>Trespass to Try Title<br>Other Property· | Annulment<br>Declare Marriage Void<br>*Divorce*<br>  With Children<br>  No Children | Enforcement<br>Modification----Custody<br>Modification----Other |
| | | | | **Title IV-D** |
| *Foreclosure*<br>Home Equity---Expedited<br>Other Foreclosure<br>Franchise<br>Insurance<br>Landlord/Tenant<br>Non-Competition<br>Partnership<br>Other Contract· | Liability:<br><br>Motor Vehicle Accident<br>Premises<br>*Product Liability*<br>  Asbestos/Silica<br>  Other Product Liability<br>  List Product:<br><br>Other Injury or Damage: | | | Enforcement/Modification<br>Paternity<br>Reciprocals (UIFSA)<br>Support Order |
| | | **Related to Criminal Matters** | **Other Family Law** | **Parent-Child Relationship** |
| | | Expunction<br>Judgment Nisi<br>Non-Disclosure<br>Seizure/Forfeiture<br>Writ of Habeas Corpus----<br>Pre-indictment<br>Other: | Enforce Foreign<br>Judgment<br>Habeas Corpus<br>Name Change<br>Protective Order<br>Removal of Disabilities<br>of Minority<br>Other: | Adoption/Adoption with<br>Termination<br>Child Protection<br>Child Support<br>Custody or Visitation<br>Gestational Parenting<br>Grandparent Access<br>Parentage/Paternity<br>Termination of Parental<br>Rights<br>Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| Discrimination<br>Retaliation<br>Termination<br>Workers' Compensation<br>Other Employment: | Administrative Appeal<br>Antitrust/Unfair<br>Competition<br>Code Violations<br>Foreign Judgment<br>Intellectual Property | Lawyer Discipline<br>Perpetuate Testimony<br>Securities/Stock<br>Tortious Interference<br>Other: | | |
| **Tax** | **Probate & Mental Health** | | | |
| Tax Appraisal<br>Tax Delinquency<br>Other Tax | *Probate/Wills/Intestate Administration*<br>  Dependent Administration<br>  Independent Administration<br>  Other Estate Proceedings | Guardianship----Adult<br>Guardianship----Minor<br>Mental Health<br>Other: | | |

## 3. Indicate procedure or remedy, if applicable *(may select more than 1):*

| | | |
|---|---|---|
| Appeal from Municipal or Justice Court<br>Arbitration-related<br>Attachment<br>Bill of Review<br>Certiorari<br>Class Action | Declaratory Judgment<br>Garnishment<br>Interpleader<br>License<br>Mandamus<br>Post-judgment | Prejudgment Remedy<br>Protective Order<br>Receiver<br>Sequestration<br>Temporary Restraining Order/Injunction<br>Turnover |

## 4. Indicate damages sought *(do not select if it is a family law case):*

Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
Less than $100,000 and non-monetary relief
Over $100, 000 but not more than $200,000
☒ Over $200,000 but not more than $1,000,000
Over $1,000,000

EXHIBIT C

Rev 2/13

6/17/2019 11:06:05 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 34417041
By: Ougrah, Chanceas
Filed: 6/17/2019 11:06:05 AM

**CIVIL PROCESS REQUEST**

## 2019-41363 / Court: 333

FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING
FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED

**CASE NUMBER:** _____  **CURRENT COURT:** _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Plaintiff's Original Petition

**FILE DATE OF MOTION:** 06/17/2019

Month/       Day/       Year

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

1.  NAME: Church Mutual Insurance Company

    ADDRESS: 211 East 7th Street, Suite 620, Austin, Texas 78701

    AGENT, (if applicable): Corporation Service Company

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): Citation

**SERVICE BY** (check one)
- ☐ **ATTORNEY PICK-UP**                    ☐ **CONSTABLE**
- ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____  Phone: _____
- ☐ **MAIL**                                ☐ **CERTIFIED MAIL**
- ☐ **PUBLICATION:**
    Type of Publication:  ☐ **COURTHOUSE DOOR, or**
                          ☐ **NEWSPAPER OF YOUR CHOICE:** _____
- ☑ **OTHER,** *explain* We will perfect service by private process. Please mail the Plaintiff's Original Petition and Citation to our San Antonio office.

*******************************************************************************

****

2.  NAME: _____

    ADDRESS: _____

    AGENT, (if applicable): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): _____

**SERVICE BY** (check one)
- ☐ **ATTORNEY PICK-UP**                    ☐ **CONSTABLE**
- ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____  Phone: _____
- ☐ **MAIL**                                ☐ **CERTIFIED MAIL**
- ☐ **PUBLICATION:**
    Type of Publication:  ☐ **COURTHOUSE DOOR, or**
                          ☐ **NEWSPAPER OF YOUR CHOICE:** _____
- ☐ **OTHER,** *explain* _____

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME: Robert A. Pollom                    TEXAS BAR NO./ID NO. 24041703

MAILING ADDRESS: 16500 San Pedro Ave., Suite 302, San Antonio, Texas 78232

PHONE NUMBER: 210      490-4357          FAX NUMBER: 210      490-8372
              area code  phone number                  area code  fax number

EMAIL ADDRESS: robert@krwlawyers.com cc: stefanie@krwlawyers.com

CIVIC108 Revised 9/2/09

EXHIBIT C

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE. SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

**X** ORIGINAL PETITION
_____   AMENDED PETITION
_____   SUPPLEMENTAL PETITION

COUNTERCLAIM
_____   AMENDED COUNTERCLAIM
_____   SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____   AMENDED CROSS-ACTION
_____   SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION:
_____   AMENDED THIRD-PARTY PETITION
_____   SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____   AMENDED INTERVENTION
_____   SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____   AMENDED INTERPLEADER
_____   SUPPLEMENTAL INTERPLEADER

INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER

BILL OF DISCOVERY:
ORDER TO: _____
(specify)

MOTION TO: _____
(specify)

PROCESS TYPES:

NON WRIT:
**X** CITATION
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)

SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

CIVCI08 Revised 9/3/99

EXHIBIT C

6/17/2019 11:06:05 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 34417041
By: Ougrah, Chancesas
Filed: 6/17/2019 11:06:05 AM

2019-41363 / Court: 333

CAUSE NO._____

| | | |
|---|---|---|
| HOLY COMFORTER LUTHERAN CHURCH | § § § § § | IN THE DISTRICT COURT |
| V. | § § § | _____ JUDICIAL DISTRICT |
| CHURCH MUTUAL INSURANCE COMPANY AND RICK CALVERT | § § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S REQUEST FOR PRODUCTION TO
## DEFENDANT CHURCH MUTUAL INSURANCE COMPANY

TO:    DEFENDANT CHURCH MUTUAL INSURANCE COMPANY, by and through its registered agent, Corporation Service Company 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

      Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiff requests that the above-named Defendant, CHURCH MUTUAL INSURANCE COMPANY (hereinafter referred to as "Defendant"), disclose, within fifty (50) days after the date of service of this request, the information or material described in the following request for production.

      Respectfully submitted,

      KETTERMAN ROWLAND & WESTLUND
      16500 San Pedro, Suite 302
      San Antonio, Texas  78232
      Telephone:    (210) 490-7402
      Telefacsimile:  (210) 490-8372


BY:    */s/ Jake Rogiers*_____
          ROBERT A. POLLOM
          State Bar No. 24041703
          JAKE ROGIERS
          State Bar No. 24069066

          ATTORNEYS FOR PLAINTIFF

EXHIBIT C

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served, along with *Plaintiff's Original Petition* to the following representative for the Defendant:

Corporation Service Company
211 East 7th Street, Suite 620
Austin, Texas 78701-3218

*Defendant's Registered Agent*

on this the 17th day of June, 2019.

*/s/ Jake Rogiers*

EXHIBIT C

## INSTRUCTIONS

1.      Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.      For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.      For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.      The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

EXHIBIT C

## DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1. "PLAINTIFF'" means HOLY COMFORTER LUTHERAN CHURCH, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

2. "DEFENDANT," means CHURCH MUTUAL INSURANCE COMPANY, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

3. "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips; diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of

EXHIBIT C

entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.      "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.      "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.      "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.      "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.      "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type and other media of any kind. The term "communication" also includes, without limitations, all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

EXHIBIT C

9.      "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in ASCii comma delimited to fixed length filed format and shall include all files, records, instructions, codes or other information necessary to retrieve the data. Electronic data should be produced in Microsoft Access 95 or Microsoft Access 95, 97 or.2000 (MDB) formal, Dbase (DU) format, Excel (xls) format or ASCii comma delimited or fixed length format (txt) and shall include all file, record and field format definitions and the instructions, codes or information necessary to retrieve the data. Such electronic data should be provided on one of the following media. Zip disk, Jaz disk, CD-ROM or 3.5" floppy disk.

10.     "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

11.     "DESCRIBE" and "IDENTIFY," when referring to a person, require statements of the following:

a.      The full name.
b.      The present or last known residential address.
c.      The present or last known residential and office telephone numbers.
d.      The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.
e.      In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

12.     "DESCRIBE" and IDENTIFY," when referring to a document, are defined to require that you state the following:

a.      The nature (e.g., letter, handwritten note) of the document
b.      The title or heading that appears on the document
c.      The date of the document and the date of each addendum supplement, or other addition or change.
d.      The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.
e.      The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

13.     The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

EXHIBIT C

14.     "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

15.     The term "LAWSUIT" means *HOLY COMFORTER LUTHERAN CHURCH v. CHURCH MUTUAL INSURANCE COMPANY AND RICK CALVERT*; In the designated Judicial District of Harris County, Texas.

16.     "RESIDENCE" and/or "PROPERTY" refers to the property located at 1901 Woodland Hills Drive, Kingwood, Texas 77339.

EXHIBIT C

## PLAINTIFF'S REQUEST FOR PRODUCTION TO DEFENDANT
## CHURCH MUTUAL INSURANCE COMPANY

1.      The insurance policy in effect on the date of Plaintiff's claim(s) making the basis of this suit.

RESPONSE:


2.      The entire claims investigation files generated and maintained by Defendant in the ordinary course of business pertaining to Plaintiff's claim(s) making the basis of this lawsuit.

RESPONSE:


3.      All training and educational materials which instruct Defendant's claims adjusters or claims handlers in handling claims for property damage coverage under Defendant's homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:


4.      All training and educational materials which instruct claims adjusters or claims handlers in handling claims for coverage for property damage, hurricane damage, hail, water damage, roof and/or wind damage under Defendant's homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:


5.      All procedure or policy manuals or guides meant to guide and assist Defendant's claims adjusters or claims handlers in handling claims for property damage, including the criteria for and the process for evaluating whether coverage exists under Defendant's homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:


6.      All procedure or policy manuals or guides meant to guide and assist Defendant's claims adjusters or claims handlers in handling claims for property damage, hurricane damage, hail, water damage, roof damages, and/or wind damage to the house, including the criteria, for and the process for, evaluating whether coverage exists under Defendant's homeowners' insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:

EXHIBIT C

7.      All communications and documents, including electronic, between Defendant and Plaintiff regarding Plaintiff's claim(s).

RESPONSE:

8.      All communications and documents, including electronic, between Defendant and any third party regarding Plaintiff's claim(s).

RESPONSE:

9.      All communications and documents, including electronic, between Defendant and any other Defendant(s) regarding Plaintiff's claim(s).

RESPONSE:

10.     All communications and documents, including electronic, between Defendant's business departments, including all persons part of the Defendant company, regarding Plaintiff's claim(s).

RESPONSE:

11.     All communications and documents Defendant sent to any other Defendant(s) in this cause of action regarding Plaintiff or the Property, after Plaintiff's claim(s) for coverage.

RESPONSE:

12.     All photographs, diagrams, drawings, or other graphic depictions of Plaintiff or the Property made the basis of this lawsuit.

RESPONSE:

13.     Any and all documents, reports, data, emails, notes, photos, videos, manuals, guides, and summaries, regarding the insurance claim(s) made the basis of this lawsuit.

RESPONSE:

14.     All reports and other documents from governmental agencies or offices regarding Plaintiff's Property or containing officially kept information regarding Plaintiff's Property.

EXHIBIT C

RESPONSE:

15.     Any and all claims files and claim reports, including but not limited to notes, emails, data, photos, videos, manuals, guides, summaries and claim documents, regarding all homeowner insurance claims made by Plaintiff under their homeowner insurance policy/policies with Defendant, specifically regarding damage to the: exterior and interior of Plaintiff's Property, This request is limited to the last ten (10) years.

RESPONSE:

16.     Any and all records and/or documents explaining criteria utilized to qualify vendors for the "approved vendors list."

RESPONSE:

17.     Any and all records and/or documents maintained by person(s) responsible for maintaining and updating the "approved vendors list."

RESPONSE:

18.     Any and all records and/or documents maintained by person(s) responsible for creating the criteria utilized to qualify vendors, including contractors and roofing companies, for the "approved vendors list."

RESPONSE:

19.     All documents including reports, estimates, data, emails, testing, sampling, videos, and photographs received by Defendant regarding inspections of Plaintiff's Property made the basis of this lawsuit.

RESPONSE:

20.     Any and all records Defendant received, including those obtained by way of deposition by written questions, regarding Plaintiff's Property made the basis of this lawsuit.

RESPONSE:

EXHIBIT C

21.     Any and all records or documents Defendant has reviewed and/or obtained regarding Plaintiff's Property made the basis of this lawsuit.

RESPONSE:


22.     Any and all claims files Defendant has reviewed and/or obtained regarding Plaintiff's Property made the basis of this lawsuit.

RESPONSE:


23.     Any and all records or documents Defendant has reviewed and/or obtained by third parties regarding Plaintiff's Property made the basis of this lawsuit.

RESPONSE:


24.     All bulletins or other communications received from the Texas Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for property damage under Defendant's homeowner insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:


25.     All bulletins or other communications received from the Texas. Department of Insurance, the Texas Insurance Commissioner, or their agents, regarding practices in the handling of claims for property damage, hurricane damage, hail, water damage, hail damage, roof damage, and/or wind damage under homeowner insurance policies in Texas. This request is limited to the last five (5) years.

RESPONSE:


26.     All materials meant to instruct and guide claims adjusters under Texas law and/or company policy with regard to unfair claims settlement practices, unfair claims handling practices, standards to be met in adjusting or handling Defendant's first party insurance claims, or avoiding charges of bad faith. This request is limited to the last five (5) years.

RESPONSE:


27.     All materials meant to instruct and guide Defendant's claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §541.060 and/or Article 21.21. This request is specifically limited to the last five (5) years.

EXHIBIT C

RESPONSE:

28.    All materials meant to instruct and guide Defendant's claims adjusters under Texas law and/or company policy with regard to understanding and complying with the Texas Insurance Code §542.055 *et seq.* and/or Article 21.55. This request is specifically limited to the last five (5) years.

RESPONSE:

29.    Any and all materials, documents, statements and/or files that demonstrate Defendant's net worth and Defendant's net income. This request is limited to the last five (5) years.

RESPONSE:

30.    Any and all materials, documents, statements and/or files that reflect complaints and/or lawsuits filed by insured against Defendant regarding the handling, review and/or adjusting of homeowner insurance claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

31.    A copy of each advertisement Defendant has used, published and/or distributed, through any means, in Texas. This request is limited to the last five (5) years.

RESPONSE:

32.    Any and all materials, handouts, manuals, outlines, articles and/or documents used or relied upon by Defendant to conduct any seminars and/or continuing education classes for Defendant's employees and/or independent adjusters, regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, and property damage claims, hurricane claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

33. Any and all materials, handouts, manuals, outlines, articles and/or documents issued by Defendant to claims representatives and/or adjusters, or received by claims representatives and/or adjusters, or relied upon by claims representatives and/or adjusters, pertaining to the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, property damage claims, hurricane claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

EXHIBIT C

RESPONSE:

34.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents distributed and/or disbursed to Defendant's employer, employees, agents and/or representatives in connection with attendance at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, and property damage, hurricane claims, hail, water damage, roof damage claims and/or wind damage claims in Texas, within the last five (5) years.

RESPONSE:

35.     Any and all materials reflecting Defendant's attendance policies for adjusters and claims representatives at seminars and/or continuing education classes regarding the adjusting and/or handling of homeowner insurance claims, commercial insurance claims, property damage claims, hurricane claims, water damage claims, roof damage claims, and/or wind damage claims in Texas. This request is limited to the last five (5) years.

RESPONSE:

36.     Any and all materials, documents, files and/or reports sent to Defendant by its employer, employees, agents, and/or representatives on a monthly, weekly, or daily basis regarding Plaintiff's claim(s). Include any and all field notes and summaries of the room-by-room scope of Plaintiff's Property made the basis of this lawsuit.

RESPONSE:

37.     Any and all materials, documents, files, and/or reports containing list(s) of contractors and/or roofing companies that have been approved and/or recommended for performance of services for Defendant in Texas, specifically related to homeowner insurance claims. This request is limited to the last five (5) years.

RESPONSE:

38.     Any and all computer programs, electronic data, documents, and/or manuals used by the adjusters and claims representatives to perform property damage estimates relating to homeowner insurance claims in Texas, including a complete copy of the computer program used to adjust Plaintiff's claim(s). This request is limited to the last five (5) years.

RESPONSE:

EXHIBIT C

39.     Any and all reference materials, handouts, manuals, outlines, articles, and/or documents that have been distributed by and/or disbursed to Defendant regarding the price estimates of contractors and changes of those estimates within different geographical areas of the State of Texas. This request is limited to the last five (5) years.

RESPONSE:


40.     Any and all materials, documents, files and/or reports of contractors and roofing companies that have been approved and/or recommended for performance of services for Defendant in Texas.  This request is limited to the last five (5) years.

RESPONSE:


41.     Any and all materials, documents, files, invoices, and/or reports of any and all contractors and roofing companies retained to investigate, inspect, and/or evaluate Plaintiff's claim(s) made the basis of this lawsuit, prepared on behalf of the Defendant.

RESPONSE:


42.     Any and all materials, documents, files, invoices, and/or reports of any and all contractors and roofing companies retained to investigate, inspect, and/or evaluate claims similar in nature to Plaintiff's claim(s) asserted in this lawsuit, prepared on behalf of Defendant. This request is limited to the State of Texas. This request is limited to the last five (5) years.

RESPONSE:


43.     A complete copy of the entire personnel file(s) of any and all adjusters assigned to Plaintiff's claim made the basis of this lawsuit.

RESPONSE:


44.     The most recent address maintained on file for any and all adjusters assigned to Plaintiff's claim made the basis of this lawsuit.

RESPONSE:

EXHIBIT C

45.     Any and all documents and/or claim files for persons or entities that have filed property damage, hurricane damage, hail, water damage, roof damage, and/or wind damage claims that have been adjusted by any adjusters and/or adjusting companies on behalf of Defendant.

RESPONSE:


46.     Any and all activity logs relating to Plaintiff's claim(s) for property damage, hurricane damage, hail, water damage, roof damage, and/or wind damage to her property, and specifically, the claim(s) made the basis of this suit.

RESPONSE:


47.     Any and all documents reflecting company guidelines, procedures, or policies that serve as criteria for evaluating whether claims are covered or excluded by any policy provisions Defendant contends applied to Plaintiff's claim(s).

RESPONSE:


48.     Any and all organizational charts for Defendant.

RESPONSE:


49.     Any and all organizational charts or diagrams for each department, unit, or section of Defendant to which Plaintiff's claim(s) was assigned. This request is limited to the last five (5) years.

RESPONSE:


50.     Any and all charts or diagrams reflecting the chain of command or supervisory hierarchy relating to each person involved in handling Plaintiff's claim(s).

RESPONSE:


51.     Any and all claims and underwriting files for each claim involving property damage, hurricane damage, hail, water damage, roof damage, and/or wind damage made against Defendant, investigated by any and all adjusters assigned to Plaintiff's claim made the basis of this lawsuit in Texas, This request is limited to the last five (5) years.

RESPONSE:

Page **15** of **22**

EXHIBIT C

52.     Any and all demand letters received by Defendant after the handling of a claim involving property damage, hurricane damage, hail, water damage, roof damage, and/or wind damage that was adjusted by any and all adjusters assigned to Plaintiff's claim made the basis of this lawsuit. This request is limited to the last five (5) years.

RESPONSE:

53.     Any and all documents reflecting or relating to Defendant's decision to pay or deny additional expenses to or on behalf of Plaintiff in this case.

RESPONSE:

54.     Any and all records reflecting payment to Plaintiff concerning Plaintiff's claim(s) made the basis of this suit.

RESPONSE:

55.     Any and all documents, including correspondence and checks, exchanged between Defendant and any and all vendors concerning Plaintiff's claim(s).

RESPONSE:

56.     Any and all documents relating to or reflecting any and all adjusters assigned to Plaintiff's claim made the basis of this Lawsuit, from the time of hiring through the present.

RESPONSE:

57.     Any and all documents relating to the assignment of Plaintiff's claim(s) to any and all adjusters assigned to Plaintiff's claim made the basis of this lawsuit, from the time of hiring through the present.

RESPONSE:

58.     Any and all documents relating to or reflecting referrals of vendors to Plaintiff or any insured.

RESPONSE:

EXHIBIT C

59.     If you are withholding documents based upon the assertion of a privilege, please produce a privilege log, detailing with reasonable particularity a description of the documents withheld, the number of documents, and the applicable privilege which Defendant claims properly precludes the information discovery.

RESPONSE:

60.     Any and all advanced or specialized certifications of personnel who inspected, investigated, and/or supervised the adjusting of the claim(s) pertaining to the Property made the basis of this lawsuit.

RESPONSE:

61.     Any and all documents, including contracts, rules, guidelines and/or instructions exchanged between Defendant, Plaintiff and any and all adjusters assigned to Plaintiff's claim made the basis of this Lawsuit, from the time of hiring through the present, and any other entities with whom Defendant worked or communicated regarding the Property made the basis of this lawsuit.

RESPONSE:

62.     All physical or tangible items and/or potentially usable evidence obtained by, or on behalf of, Defendant from the scene of the occurrence made the basis of this suit.

RESPONSE:

63.     Any and all indemnity agreements between Defendant and any other person, firm, or corporation against which a claim of indemnification might be brought because of the facts in this lawsuit.

RESPONSE:

64.     Any and all complaint policies and procedures regarding the handling by Defendant of complaints made by insured homeowners. This request is limited to the last five (5) years.

RESPONSE:

65.     Copies of all job descriptions of employees that adjusted or in any way supervised the handling of Plaintiff's claim(s).

EXHIBIT C

RESPONSE:

66.     All non-privileged e-mails regarding the investigation, adjusting, and/or handling of the claim(s) made the basis of this lawsuit.

RESPONSE:

67.     All e-mails between Defendant's adjusters, agents, supervisors, officers, and/or executives regarding changes in the educational programs relating to the handling of property damage, hurricane damage, hail, water damage, and/or roof damage claims.

RESPONSE:

68.     All computer files, databases, electronically-stored information or computer-stored information regarding property damage, hurricane damage, water damage and/or roof damage that have been compiled, prepared, and/or supervised by Defendant, whether or not they are in Defendant's possession or in the possession of another entity.

RESPONSE:

69.     True and complete copies of all billing records from any and all independent adjusters regarding the claim(s) made the basis of this lawsuit.

RESPONSE:

70.     True and complete copy of activity logs filed by the staff and independent adjusters on the file pertaining to the claim(s) made the basis of this lawsuit.

RESPONSE:

71.     Any and all reports, documents, or correspondence containing the names and locations of all adjusters who have worked on this file to the present.

RESPONSE:

72.     True and complete copies of all billings on the file from the independent adjusters, including the time sheets or documentation used to justify the billings.

EXHIBIT C

<u>RESPONSE:</u>

73.     Any and all reports, documents or correspondence reflecting the reserving and payment history of indemnity, expenses, and vendors on this file including but not limited to dates, changes and requests made by the adjusters. This request is limited to the last five (5) years.

<u>RESPONSE:</u>

74.     Any and all correspondence and lawsuits involving vendors, staff or management involved with property claims, property damage, hurricane damage, hail, water damage, roof damage, and/or wind damage claims from 2000 to present.

<u>RESPONSE:</u>

75.     Any and all correspondence and lawsuits concerning the issues of honesty, conflict of interest, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior of any person associated with the handling of Defendant's claims files, management of property damage, hail, water damage, roof damage and/or wind damage claims, including staff and vendors.

<u>RESPONSE:</u>

76.     Any and all answers made in previous discovery requests for lists or databases of property damage, hurricane damage, hail damage, water damage, roof damage and/or wind damage.

<u>RESPONSE:</u>

77.     Any and all answers and affidavits made by Defendant and its counsel in previous discovery requests for training procedures, and training manuals for property damage, hurricane damage, hail damage, water damage, roof damage, and/or wind damage claims.

<u>RESPONSE:</u>

78.     Any and all reports, documents or correspondence reflecting the history of payment and reserves on this file.

<u>RESPONSE:</u>

EXHIBIT C

79.     Any and all reports, documents or correspondence containing names of designated individuals who gave testimony as Person Most Knowledgeable for claims, property damage, hurricane damage, catastrophe, hail damage, water damage, roof damage, and/or wind damage claims for 2000 through the present, along with a list of the lawsuits where testimony was given.

RESPONSE:


80.     Any and all training manuals used by vendors to train their adjusters on property damage, hurricane damage, hail damage, water damage, roof damage, and/or wind damage for Defendant. This request is limited to the last five (5) years.

RESPONSE:


81.     Any and all correspondence from Defendant to and from vendors regarding any instructions, procedures, changes, training, payments, and billing for property damage, hurricane, flood, wind, hail and catastrophe claims for 2000 through the present, including but not limited to computer disks, e-mails, paperwork, and manuals.

RESPONSE:


82.     Any and all correspondence concerning issues with billing and claims handling with Defendant's vendors, and/or independent adjusting companies. This request is limited to the last five (5) years.

RESPONSE:


83.     Any and all demand letters, lawsuits and/or subrogation claims filed against any of Defendant's vendors, or by any vendors against Defendant.  This request is limited to the last five (5) years.

RESPONSE:


84.     Any and all reports, documents or correspondence containing lists of attendees, dates, and locations of all meetings conducted by Defendant for all independent adjusters and Defendant's staff for property damage claims, hurricane damage claims, flood damage claims, wind damage claims, hail damage claims, water damage claims, and/or roof damage claims training. This request is limited to the last five (5) years.

RESPONSE:

EXHIBIT C

85.     Any and all reports, documents or correspondence containing lists of files with written complaints or DOI complaints on property damage, hurricane damage, wind damage, hail damage, water damage, and/or roof damage claims previously gathered and produced in other TDI complaints or lawsuits. This request is limited to the last five (5) years.

RESPONSE:


86.     Any and all reports, documents or correspondence containing lists of all lawsuits or disputes filed against Defendant or its entities or affiliates nationwide, containing an element of property damage, hurricane damage, hail damage, water damage, roof damage, and/or wind damage for 2000 through the present.

RESPONSE:


87.     Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiff under their insurance policy in effect during the time of the insurance claim made the basis of this lawsuit, and which was issued by Defendant.

RESPONSE:


88.     Copies of the front and back of each negotiated check made payable solely or co-payable to Plaintiff regarding the insurance claim made the basis of this lawsuit.

RESPONSE:


89.     Studies commissioned by Defendant, including any done by a law firm to analyze their claim management strategies, and/or to help them improve corporate profits.

RESPONSE:


90.     Affidavits or depositions of the employee(s) who handled Plaintiff's claim(s), or their supervisors, in all other cases involving the same or similar allegations as in this case.

RESPONSE:


91.     The entire underwriter's file for underwriting the insurance policy made the basis of this lawsuit.

EXHIBIT C

RESPONSE:

92.     All notes, reports, documents, or applications created and/or generated by Defendant's underwriting department relating to the insurance policy made the basis of this lawsuit.

RESPONSE:

93.     All documents and communications, including electronic, between Defendant and any engineer(s) or engineering company(s), used to evaluate Plaintiff's claim(s), or other person(s) used in handling Plaintiff's claim(s), in the last five years regarding, in any way, the investigation of a residence, commercial building or church, involving damages to the structure or its contents.

RESPONSE:

EXHIBIT C

6/17/2019 11:06:05 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 34417041
By: Ougrah, Chanceas
Filed: 6/17/2019 11:06:05 AM

# 2019-41363 / Court: 333

CAUSE NO._____

| | | |
|---|---|---|
| HOLY COMFORTER LUTHERAN CHURCH | § § § § § | IN THE DISTRICT COURT |
| V. | § § § | _____ JUDICIAL DISTRICT |
| CHURCH MUTUAL INSURANCE COMPANY AND RICK CALVERT | § § | HARRIS COUNTY, TEXAS |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHURCH MUTUAL INSURANCE COMPANY

TO:   DEFENDANT CHURCH MUTUAL INSURANCE COMPANY, by and through its registered agent, Corporation Service Company 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiff requests that the above-named Defendant, CHURCH MUTUAL INSURANCE COMPANY (hereinafter referred to as "Defendant"), disclose, within fifty (50) days after the date of service of this request, the information or material described in the following set of interrogatories.

Respectfully submitted,

KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas  78232
Telephone:     (210) 490-7402
Telefacsimile:  (210) 490-8372

BY:    /s/ Jake Rogiers_____
ROBERT A. POLLOM
State Bar No. 24041703
JAKE ROGIERS
State Bar No. 24069066

ATTORNEYS FOR PLAINTIFF

EXHIBIT C

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing has been served, along with *Plaintiff's Original Petition* to the following representative for the Defendant:

Corporation Service Company
211 East 7th Street, Suite 620
Austin, Texas 78701-3218

*Defendant's Registered Agent*

on this the 17th day of June, 2019.


*/s/ Jake Rogiers*
JAKE ROGIERS

EXHIBIT C

## INSTRUCTIONS

1.      Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.      For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.      For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.      The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

EXHIBIT C

DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.    "PLAINTIFF'" means HOLY COMFORTER LUTHERAN CHURCH, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

2.    "DEFENDANT," means CHURCH MUTUAL INSURANCE COMPANY, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

3.    "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips; diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed  matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of

EXHIBIT C

entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches; statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.      "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.      "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.      "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.      "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.      "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type and other media of any kind. The term "communication" also includes, without limitations, all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

EXHIBIT C

9.      "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in ASCii comma delimited to fixed length filed format and shall include all files, records, instructions, codes or other information necessary to retrieve the data. Electronic data should be produced in Microsoft Access 95 or Microsoft Access 95, 97 or.2000 (MDB) formal, Dbase (DU) format, Excel (xls) format or ASCii comma delimited or fixed length format (txt) and shall include all file, record and field format definitions and the instructions, codes or information necessary to retrieve the data. Such electronic data should be provided on one of the following media. Zip disk, Jaz disk, CD-ROM or 3.5" floppy disk.

10.     "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

11.     "DESCRIBE" and "IDENTIFY," when referring to a person, require statements of the following:

a.      The full name.
b.      The present or last known residential address.
c.      The present or last known residential and office telephone numbers.
d.      The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.
e.      In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

12.     "DESCRIBE" and IDENTIFY," when referring to a document, are defined to require that you state the following:

a.      The nature (e.g., letter, handwritten note) of the document
b.      The title or heading that appears on the document
c.      The date of the document and the date of each addendum supplement, or other addition or change.
d.      The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e.      The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

13.     The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

EXHIBIT C

14.     "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

15.     The term "LAWSUIT" means *HOLY COMFORTER LUTHERAN CHURCH v. CHURCH MUTUAL INSURANCE COMPANY AND RICK CALVERT*; In the designated Judicial District of Harris County, Texas.

16.     "RESIDENCE" and/or "PROPERTY" refers to the property located at 1901 Woodland Hills Drive, Kingwood, Texas 77339.

EXHIBIT C

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT
### CHURCH MUTUAL INSURANCE COMPANY

1.      State the name, address, telephone number, and position or job title of all persons answering these interrogatories.

RESPONSE:


2.      State whether Defendant contends that any conditions precedent to Plaintiff's recovery has not been met, whether said conditions be stated in the insurance policy or required by law. If so, state what conditions have not been met.

RESPONSE:


3.      List the date(s) Defendant requested that Plaintiff provide any named Defendant(s) in this cause of action with requested information that was required in order to properly evaluate Plaintiff's claim(s).

RESPONSE:


4.      List the date(s) Defendant received Plaintiff's notice of claim(s) for coverage for property damages, the date(s) Defendant first acknowledged Plaintiff's notice of claim(s), and in what form the notice of claim was submitted.

RESPONSE:


5.      State whether Defendant contends that Plaintiff did not provide any named Defendant(s) in this cause of action with requested information that was required in order to properly evaluate Plaintiff's claim(s). If so, state what information was requested and not provided, and the dates of the requests.

RESPONSE:


6.      State the name, address, telephone number, and job title or position of all persons who issued, adjusted, investigated, reviewed, handled, made entries, made decisions, or exchanged any documents or communications, including electronic, regarding Plaintiff's insurance policy or the claim(s) made the basis of this lawsuit, including the name, address, and telephone number of the supervisor of the identified person.  For any such person who is no longer an employee, agent, or representative of any defendant, please so indicate and provide the person's last known address and telephone number.

EXHIBIT C

RESPONSE:

7.      State every basis, in fact and in the terms of Plaintiff's policy, for Defendant's denial and/or recommendation of denial of Plaintiff's claim(s).

RESPONSE:

8.      State every basis, in fact and in the terms of Plaintiff's policy, for Defendant's failure to pay for Plaintiff's full claims.

RESPONSE:

9.      State the cause number, style, and court for each lawsuit filed against Defendant in the last five years alleging misconduct, improper claims handling, bad faith, violations of Texas Insurance Code §541.060, formerly known as Article 21.21, or violations of Texas Insurance Code §542.055, *at seq.,* formerly known as Article 21.55, in the handling of first party claims for property damage coverage under homeowner insurance policies.

RESPONSE:

10.     State the legal theories and describe the factual bases, for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §541.060, the violation of which is alleged in Plaintiff's current live pleading against Defendant.

RESPONSE:

11.     State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.055, in that Defendant followed all statutory deadlines, and by no later than the 15th day of notice of the claim (in the event of a weather-related catastrophe or major natural disaster, as defined by the commissioner, the claim-handling deadlines under this subchapter are extended for an additional 15 days acknowledged receipt of the claim, commenced investigation of the claim, and requested any proper documents from Plaintiff's reasonably believed necessary to conduct such investigation, made additional requests during the investigation as necessary, and if acknowledgment of receipt of the claim was not in writing, made record of the date, manner and content, as refuted in Plaintiff's current live pleading against Defendant.

RESPONSE:

EXHIBIT C

12.     State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins: Code §542.056, in that Defendant followed all statutory deadlines by notifying Plaintiff's in writing the acceptance or rejection of Plaintiff's claim no later than the 15th business day after receipt of any requested information from Plaintiff's, (in the event of a weather-related catastrophe or major natural disaster, as defined by the commissioner, the claim-handling deadlines under this subchapter are extended for an additional 15 days), including stating the reason if rejected or explanation of why Defendant could not do so within that time, as refuted in Plaintiff's current live pleading against Defendant.

<u>RESPONSE</u>


13.     State the legal theories and describe the factual bases for your contention that Defendant fully complied with each of the claims handling requirements codified in Tex. Ins. Code §542.058, in that Defendant after receiving all items, statements, and forms reasonably requested and required under § 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by § 542.060, except where it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer, receiving all necessary information, Defendant did not delay in making payments for more than 60 days, as refuted in Plaintiff's current live pleading against Defendant.

<u>RESPONSE</u>;


14.     State the name, address, and telephone number of each policyholder who gave Defendant written notice, within the last five years, of a complaint about Defendant's handling of first party claims for property damage coverage under homeowner insurance policies in Texas.

<u>RESPONSE</u>:


15.     State the name, address, and telephone number of each policyholder from whom Defendant recorded a complaint, within the last five years, about Defendant's handling of first party claims for property damage coverage under homeowner policies in Texas.

<u>RESPONSE</u>:


16.     For each complainant identified in the responses to interrogatories 14 and 15, state whether any communication was exchanged between Defendant and any Texas governmental regulatory agency regarding the complaint. If the response is yes, for any such complainant, state the name of the agency, the name of the government's representative with whom Defendant exchanged communication, and the reason for the governmental agency's involvement.

EXHIBIT C

RESPONSE:

17.    For each investigation by a Texas governmental agency within the last five years into Defendant's practices when handling first party claims for property damage coverage under homeowner/commercial policies, state the name of the agency, the names of all investigators, and the names of all government representatives with whom Defendant communicated for purposes of the investigation.

RESPONSE:


18.    Identify by name, address, and telephone number, all persons and or entities that have filed property damage claims, hurricane damage claims, hail damage claims, water damage claims, roof damage claims and/or wind damage claims with Defendant that have been adjusted by any and all adjusters assigned to Plaintiff's claim made the basis of this Lawsuit, from the time of hiring through the present.

RESPONSE:


19.    Please state whether Defendant took, or is aware of the taking of, a recorded statement and/or examination under oath of any representative, or agent of, or any person employed by, Plaintiff regarding the claim made the basis of this lawsuit. If a recorded statement and/or examination under oath was taken, please state the date it was taken and the name of the person taking the statement. Please also state whether the statement was transcribed, where the statement is currently located, and/or the last place Defendant saw a transcription of same.

RESPONSE:


20.    Identify by name, address, and telephone number, all persons and/or entities, agency or agents, and brokers that have issued Plaintiff's Policy.

RESPONSE:


21.    Identify by name, address, and telephone number, all persons and/or entities, agency or agents, and brokers that prepared Plaintiff's Policy including the Property made basis of the claim(s).

RESPONSE:

EXHIBIT C

22.     Identify by name or company name, address, and telephone number any engineer(s) and/or engineering company(s), used to evaluate Plaintiff's claim(s), the name(s) of each prior claim each such person(s) and/or company(s) worked for Defendant, the date(s) of the reports, and the address of the Property for which the inspection was done.

<u>RESPONSE:</u>


23.     For each of the above listed engineer(s) or engineering company(s), list the compensation received from Defendant for any services and work performed in the last five years.

<u>RESPONSE:</u>

EXHIBIT C

6/17/2019 11:06:05 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 34417041
By: Ougrah, Chancesas
Filed: 6/17/2019 11:06:05 AM

## 2019-41363 / Court: 333

CAUSE NO._____

| | | |
|---|---|---|
| HOLY COMFORTER LUTHERAN CHURCH | § § § § § | IN THE DISTRICT COURT |
| V. | § § § | _____ JUDICIAL DISTRICT |
| CHURCH MUTUAL INSURANCE COMPANY AND RICK CALVERT | § § § | HARRIS COUNTY, TEXAS |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO
DEFENDANT CHURCH MUTUAL INSURANCE COMPANY**

TO:    DEFENDANT CHURCH MUTUAL INSURANCE COMPANY, by and through its registered agent, Corporation Service Company 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

Pursuant to the Texas Rules of Civil Procedure, Plaintiff hereby serves his First Set of Requests for Admissions to Defendant, CHURCH MUTUAL INSURANCE COMPANY (hereinafter referred to as "Defendant"), and requests that it answer each request separately, fully and in writing on or before fifty (50) days after service of these requests.

Respectfully submitted,

KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232
Telephone:    (210) 490-7402
Telefacsimile:  (210) 490-8372

BY:    */s/ Jake Rogiers*_____
        ROBERT A. POLLOM
        State Bar No. 24041703
        JAKE ROGIERS
        State Bar No. 24069066

        ATTORNEYS FOR PLAINTIFF

Page **1** of **11**

EXHIBIT C

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing has been served, along with *Plaintiff's Original Petition* to the following representative for the Defendant:

Corporation Service Company
211 East 7th Street, Suite 620
Austin, Texas 78701-3218

*Defendant's Registered Agent*

on this the 17th day of June, 2019.

*/s/ Jake Rogiers*
JAKE ROGIERS

EXHIBIT C

## INSTRUCTIONS

1.      Answer each request for documents separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response provide both the information that identifies the document and the document's number(s). There is a duty to supplement any answer made to the request for documents when the original answer is no longer true, or was incorrect or incomplete when made.

2.      For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other applicable ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, address and job title of the person to whom it was addressed, circulated, or who saw it; the name, job title, and address of the person now in possession of the document; a description of the subject matter of the document; the document's present location; and the custodian for the document.

3.      For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

4.      The documents produced pursuant to the following requests for documents are considered to be authentic unless a proper objection is asserted as to the documents' authenticity under the Texas Rules of Civil Procedure.

EXHIBIT C

DEFINITIONS

The following definitions shall have the following meanings, unless the context of the requests for documents require otherwise:

1.      "PLAINTIFF'" means HOLY COMFORTER LUTHERAN CHURCH, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

2.      "DEFENDANT," means CHURCH MUTUAL INSURANCE COMPANY, along with its agents, representatives, and all other persons acting in concert with it, or under its control, whether directly or indirectly, including any attorney.

3.      "DOCUMENT," "DOCUMENTS" and "DOCUMENTATION" are used in their broadest sense and mean all written, printed, typed, recorded, or graphic matter of every kind and description, source and authorship, both originals and all nonidentical copies thereof, and all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative or private entity or person. Without limiting the foregoing, the terms "document" and "documents" include handwritten, typewritten, printed, photocopied, photographic or recorded, stenographic, computer-generated, computer-installed or electronically stored matters, however and by whomever produced, prepared, reproduced, disseminated or made, and includes communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instruction and other materials necessary to understand and use such systems. For purposes of illustration and no limitation, "documents" includes: accounts; advertising; affidavits; agendas; agreements; analyses; analytical records; announcements; appointment books; appraisals; articles; bills; statements and other records of obligations and expenditures; books; brochures; bulletins; calendars; checks; cancelled checks, vouchers, receipts and other records of payments; charts, drawings; check registers; checkbooks; circulars; collateral files and contents; communications; compilations; confirmations; consultant's reports; contracts; corporate by-laws; corporate charters; correspondence; credit files and contents; data compilations from which information can be obtained (including matter used in data processing); deeds of trust; deposit slips; diaries, diary entries; drafts; envelopes; folders or similar containers; expense reports; facsimile transmissions; files; film tape; financial statements; forecasts; graphs; guaranty agreements; instructions, invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; letters of credit; lists; log books; logs, notes or memoranda of telephonic or face-to-face conversations; manuals; maps, marginal notations; memoranda of all kinds to and from any persons, agencies or entities; messages; microfilm; microfiche; minutes; minute books; notes; notebooks; notices; pamphlets; parts lists; papers; photographs, press releases; printed matter (including published books, articles, speeches and newspaper clippings); printouts; programs; punch cards; purchase orders; receipts; recommendations; records; records of administrative, technical and financial actions taken or recommenced; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; sell orders; sound recordings; specifications; speeches;

EXHIBIT C

statement of bank accounts; statements, interviews; statistical data; statistical statements, stock transfer ledger; studies; surveys; tables; tabulations; tape or disk recordings; tape programs; technical and engineering reports, evaluations; advice; recommendations; commentaries; conclusions; studies; test plans; manuals; procedures; data; reports; results and conclusions; summaries, minutes, notes and other records and recording of any conference, meetings, visits, negotiations, statement, interviews or telephone conversations; other summaries; telegrams; teletypes, telexes and other communications sent or received; time records; telephone bills or records; trade letters; transcripts of hearings; transcripts of testimony; UCC instruments; video recordings; visitor records; vouchers; work assignments; work sheets; work papers; and all other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored or electronically stored matter, however or by whomever produced, prepared, reproduced, disseminated or made, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

4.    "PERSON" includes individuals, associates of individuals, partnerships, joint-stock companies, corporations, or trustee or receiver of an individual, association of individuals, joint-stock company or corporation, and any other type of entity or institution, whether formed for business or any other purposes.

5.    "PARTY" shall mean any party whomsoever to the dispute, and includes each party's agents, employees, attorneys, representatives, predecessors, successors, affiliates, partners, officers, directors, principals and any and all other persons acting or purporting to act on the party's behalf or under the party's control. For purposes of the duty to supplement, the term also includes entities, which become parties subsequent to the date this request for documents is served.

6.    "RELATING TO" and or "RELATES TO" means in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, or dealing with, or in any way pertaining to.

7.    "CONCERNING" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, and constituting.

8.    "COMMUNICATION" means the transmission, sending and/or receipt of information of any kind by or through any means, including but not limited to speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (e.g., email), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, "floppy disks", CD-ROM disks, sound, radio or video signals, telecommunication, telephone teletype, facsimile, telegraph, microfilm, microfiche, photographic film of any type and other media of any kind. The term "communication" also includes, without limitations, all "records" (as hereafter defined) and all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, and press, publicity or trade releases.

9.    "RECORD(S)" means all documents and writings of any kind, and all communications (as defined above) which are stored or retrievable or recorded in any manner, including originals and all non-identical copies whether different from the originals by notation made on such copies or

EXHIBIT C

otherwise, all drafts, alterations, modifications, changes and amendments, graphic or any electronic or mechanical records or representation of any kind, created during the period 2000 to present. Any electronic records or computer data which may exist shall be produced in ASCii comma delimited to fixed length filed format and shall include all files, records, instructions, codes or other information necessary to retrieve the data. Electronic data should be produced in Microsoft Access 95 or Microsoft Access 95, 97 or 2000 (MDB) formal, Dbase (DU) format, Excel (xls) format or ASCii comma delimited or fixed length format (txt) and shall include all file, record and field format definitions and the instructions, codes or information necessary to retrieve the data. Such electronic data should be provided on one of the following media. Zip disk, Jaz disk, CD-ROM or 3.5" floppy disk.

10.     "DATE" means the exact date, month, and year, if ascertainable, or, if not, the best available approximation.

11.     "DESCRIBE" and "IDENTIFY," when referring to a person, require statements of the following:

a       The full name.
b.      The present or last known residential address.
c.      The present or last known residential and office telephone numbers.
d.      The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.
e.      In the case of any person other than an individual, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

12.     "DESCRIBE" and IDENTIFY," when referring to a document, are defined to require that you state the following:

a.      The nature (e.g., letter, handwritten note) of the document
b.      The title or heading that appears on the document
c.      The date of the document and the date of each addendum supplement, or other addition or change.
d.      The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e       The present location of the document, and the name, address, position, or title, and telephone number of the person or person having custody of the document.

13.     The words "AND" and "OR" should be construed either conjunctively or disjunctively as required by the context to bring within the scope of these discovery requests any answer, response or document that might be deemed outside its scope by another construction.

14.     "PERTAINS TO" or "PERTAINING TO" means relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, proves, evidences, shows, reflects, refutes, disputes, rebuts, controverts or contradicts.

EXHIBIT C

15.    The term "LAWSUIT" means *HOLY COMFORTER LUTHERAN CHURCH v. CHURCH MUTUAL INSURANCE COMPANY AND RICK CALVERT*; In the designated Judicial District of Harris County, Texas.

16.    "RESIDENCE" and/or "PROPERTY" refers to the property located at 1901 Woodland Hills Drive, Kingwood, Texas 77339.

EXHIBIT C

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT CHURCH MUTUAL INSURANCE COMPANY

**REQUEST FOR ADMISSION NO. 1**
Defendant failed to inspect the entire property.

**REQUEST FOR ADMISSION NO. 2**
Defendant conducts the business of insurance in Texas.

**REQUEST FOR ADMISSION NO. 3**
Defendant insured Plaintiff's property that makes the basis of this lawsuit.

**REQUEST FOR ADMISSION NO. 4**
Defendant insured Plaintiff's property against wind and hail damage.

**REQUEST FOR ADMISSION NO. 5**
Plaintiff's property sustained wind damage as a result of the windstorm that makes the basis of this lawsuit.

**REQUEST FOR ADMISSION NO. 6**
Plaintiff's roof sustained wind damage as a result of the windstorm that makes the basis of this lawsuit.

**REQUEST FOR ADMISSION NO. 7**
The windstorm created openings in Plaintiff's roof whereby water leaked into the interior of Plaintiff's Property causing damage.

**REQUEST FOR ADMISSION NO. 8**
As a result of water leaking into Plaintiff's Property, Plaintiff's personal property was damaged.

**REQUEST FOR ADMISSION NO. 9**
The exterior of Plaintiff's Property sustained wind damage as a result of the windstorm that makes the basis of this lawsuit.

**REQUEST FOR ADMISSION NO. 10**
The windstorm that damaged Plaintiff's property was a covered occurrence under Plaintiff's insurance policy with the Defendant insurance company.

**REQUEST FOR ADMISSION NO. 11**
Plaintiff's property sustained hail damage as a result of the wind and/or hail storm that makes the basis of this lawsuit.

**REQUEST FOR ADMISSION NO. 12**
Plaintiff's roof sustained hail damage as a result of the wind and/or hail storm.

EXHIBIT C

**REQUEST FOR ADMISSION NO. 13**
The exterior of Plaintiff's Property sustained hail damage as a result of the wind and/or hail storm.

**REQUEST FOR ADMISSION NO. 14**
Plaintiff's personal property was damaged as a result of the wind and/or hail storm.

**REQUEST FOR ADMISSION NO. 15**
The wind and/or hail storm that damaged Plaintiff's property was a covered occurrence under Plaintiff's insurance policy with the Defendant insurance company.

**REQUEST FOR ADMISSION NO. 16**
Defendant did a substandard and quick investigation in the handling of Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 17**
Defendant improperly and unreasonably adjusted Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 18**
Defendant performed an outcome-oriented investigation of Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 19**
Defendant did not take photos of the property in regard to Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 20**
Defendant did not conduct a reasonable investigation of Plaintiff's damage.

**REQUEST FOR ADMISSION NO. 21**
Defendant misrepresented the amount of damages sustained to Plaintiff's Property.

**REQUEST FOR ADMISSION NO. 22**
Defendant has unreasonably delayed payment to the Plaintiff and failed to fairly settle Plaintiff's claim even though liability was reasonably clear.

**REQUEST FOR ADMISSION NO. 23**
Defendant was not open and honest in their adjustment of Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 24**
Defendant failed to make an attempt to settle Plaintiff's claim in a fair manner.

**REQUEST FOR ADMISSION NO. 25**
Defendant misrepresented to Plaintiff that the damage to Plaintiff's Property was not covered under the Policy.

**REQUEST FOR ADMISSION NO. 26**
Defendant misrepresented to Plaintiff that the damage to Plaintiff's property did not need to be replaced.

EXHIBIT C

**REQUEST FOR ADMISSION NO. 27**
Defendant was aware that the damage to Plaintiff's property warranted replacement and not repair.

**REQUEST FOR ADMISSION NO. 28**
Defendant took advantage of Plaintiff's lack of knowledge and inexperience.

**REQUEST FOR ADMISSION NO. 29**
Defendant engaged in false, misleading, and deceptive acts or practices in the business of insurance in the handling of Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 30**
Defendant made material false representations and/or material false promises to Plaintiff.

**REQUEST FOR ADMISSION NO. 31**
Defendant intended that Plaintiff would rely on Defendant's false representations.

**REQUEST FOR ADMISSION NO. 32**
Plaintiff did reasonably rely on Defendant's false representations to Plaintiff's detriment.

**REQUEST FOR ADMISSION NO. 33**
Defendant breached its insurance contract with Plaintiff.

**REQUEST FOR ADMISSION NO. 34**
Defendant failed to provide its adjuster with policies, guidelines, and/or materials pertaining to the lawful handling of insurance claims.

**REQUEST FOR ADMISSION NO. 35**
Defendant purposefully denied and/or underpaid Plaintiff's claim in order to continue making profit off of Plaintiff.

**REQUEST FOR ADMISSION NO. 36**
It was reasonably clear that Plaintiff's damages exceeded the Policy deductible.

**REQUEST FOR ADMISSION NO. 37**
Defendant provides incentives and/or bonuses to its adjusters for closing out claims without adequate payment.

**REQUEST FOR ADMISSION NO. 38**
Defendant provided a bonus to its adjuster in relation to Plaintiff's claim.

**REQUEST FOR ADMISSION NO. 39**
Defendant has been reported to the Texas Department of Insurance for the mishandling of claims in the last 5 years.

EXHIBIT C

**REQUEST FOR ADMISSION NO. 40**
The Adjuster assigned to Plaintiff's claim has been sued in the past 5 years for the mishandling of claims.

**REQUEST FOR ADMISSION NO. 41**
Defendant has a duty to pay for damages covered under the Policy that are not otherwise excluded.

**REQUEST FOR ADMISSION NO. 42**
Defendant has a duty to conduct a reasonable investigation.

**REQUEST FOR ADMISSION NO. 43**
Under the terms of the Policy, Defendant has a duty to conduct a reasonable investigation.

**REQUEST FOR ADMISSION NO. 44**
While handling a claim that is covered under Defendant's policy, Defendant has a duty to give its insureds the benefit of the doubt.

**REQUEST FOR ADMISSION NO. 45**
Defendant excluded coverage in regard to Plaintiff's claim without any reasonable basis.

**REQUEST FOR ADMISSION NO. 46**
With regard to Plaintiff's claim, Defendant's adjuster had no specialized certifications or qualifications adjusting wind related insurance claims.

**REQUEST FOR ADMISSION NO. 47**
With regard to Plaintiff's claim, Defendant's adjuster had no specialized certifications or qualifications adjusting hail related insurance claims.

**REQUEST FOR ADMISSION NO. 48**
The date of the occurrence, which caused the damages claimed by Plaintiff is May 1, 2017.

**REQUEST FOR ADMISSION NO. 49**
Defendant did not perform a re-inspection of the property after receiving Plaintiff's Texas Insurance Code Notice and Demand Letter.

**REQUEST FOR ADMISSION NO. 50**
Defendant's Adjuster did not perform scientific testing regarding the causation of Plaintiff's damages to the roof.

**REQUEST FOR ADMISSION NO. 51**
Defendant's engineer did not perform scientific testing regarding the causation of Plaintiff's damages to the roof.

**REQUEST FOR ADMISSION NO. 52**
Defendant conducted a visual inspection only of the Property.

EXHIBIT C